IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAFIZ MATIULLAH KHALID, <br> MADRASAH ISLAMIAH, INC. <br><br> Plaintiff, <br><br> VS. <br><br> DHS, USA, and USCIS, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-12-3492 |

**MEMORANDUM AND OPINION**

Hafiz Matiullah Khalid challenges the denial of his I-485 application, his I-129 petition, and his I-360 petition. The government contends that this court lacks subject-matter jurisdiction to consider the denial of the I-485 application and that Khalid lacks standing to challenge the denial of his I-129 and I-360 petitions. The government also seeks to dismiss the Attorney General, Eric Holder, from this action as an improperly named defendant. Based on the pleadings; the motion, response, and reply; the oral argument; and the relevant law, the court grants the government's motion. A status conference is set for **March 12, 2014** at 5:00 p.m. to address the claims raised by Madrasah Islamiah, Inc. and the information provided in the January 21, 2014 status report.

The reasons for these rulings are explained below.

**I.    Background**

Hafiz Matiullah Khalid is a certified religious scholar and teacher, and an assistant imam. From 1988 to 2003, Khalid worked at Madrasa Usmania in Pakistan. In 2004, Khalid came to the United States on a nonimmigrant religious-worker visa (R-1) to teach at the American

Society for Islamic Awareness. In 2005, Khalid began teaching for a religious school operated by the plaintiff, Madrasa Islamiah, a non-profit Islamic school and mosque.

In November 2006, Madrasa Islamiah filed an I-360 visa petition on Khalid's behalf. In August 2007, Khalid contacted the United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security to ask about his petition. A month later, Khalid learned that USCIS delayed processing it pending the results of the required security checks. In April 2008, Khalid again asked about the petition. He learned then that his case had been selected for a detailed background check. In October 2008, Khalid again asked about his petition. In November 2008, Khalid learned that his background check was still pending.

In February 2009, the defendants issued a second Request for Evidence asking Madrasa Islamiah to supplement the administrative record with a description of Khalid's work as a religious teacher. In response, Madrasa Islamiah provided an attestation with information about Khalid's work schedule and duties.

In July 2009, Khalid filed an I-485 application for adjustment of status under the I-360 petition. Khalid also filed Form I-129 to renew his R-1 visa. In January 2010, the USCIS denied Khalid's I-360 petition, I-485 application, and I-129 petition. The I-360 and I-485 were denied because the I-360 did not establish that Khalid was qualified to perform the religious work identified in the petition and Khalid's other duties did not require religious qualifications.

Khalid appealed these decisions to the Administrative Appeals Office (AAO). The AAO acknowledged that the I-485 application and petitions had not been evaluated under the correct standards and that the decisions on the application and petitions were incorrect in some instances. The AAO nonetheless denied the appeal, stating that the submitted documents did not provide sufficient proof of Khalid's salary and the housing he would be provided as part of his

compensation. Khalid timely filed this lawsuit challenging these administrative rulings under the Administrative Procedure Act, 5 U.S.C. § 706, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The defendants have moved to dismiss the complaint, arguing that the court lacks subject-matter jurisdiction to consider the denial of the I-485 application and that Khalid lacks standing as a beneficiary to challenge the denial of the I-360 and I-129 petitions under the Administrative Procedure Act. The government also argues that Eric Holder should be dismissed as a defendant. The arguments and responses are analyzed based on the applicable legal standards and the record.

## II.    Jurisdiction Over the Challenge to the I-485 Application Denial

The plaintiffs' request that this court review the denial of Khalid's I-485 application is governed by the REAL ID Act, Pub. L. No., 109-13, 119 Stat. 231 (2005). "'The Act amends the jurisdictional provisions of the Immigration and Nationality Act[(INA).]'" *Jean v. Gonzales*, 452 F.3d 392, 396 (5th Cir. 2006) (quoting *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735–36 (5th Cir. 2005) (per curiam), *cert. denied*, 546 U.S. 1106, 126 S.Ct. 1055, 163 L.Ed.2d 882 (2006)).

Section 1255 of the INA vests the Attorney General with the discretion to adjust an alien's status, provided that:

> (1) the alien makes an application for such adjustment;
> (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and
> (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). The REAL ID Act strips district courts of jurisdiction to review decisions denying § 1255 applications:

3

> (B) Denials of Discretionary Relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory) . . . *except as provided in subparagraph (D)*, and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the grant of relief under section . . . 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(i), (ii) (emphasis added). Subparagraph (D), the exception emphasized above, provides for judicial review of "constitutional claims or questions of law . . . filed with an appropriate *court of appeals*[.]" 8 U.S.C. § 1252(a)(2)(D) (emphasis added).

The Fifth Circuit has provided clear guidance on status-adjustment applications. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 274 (5th Cir. 2008); *Zhao v. Gonzales*, 404 F.3d 295, 305 (5th Cir. 2005) (per curiam). The Fifth Circuit's decision in *Zhao v. Gonzales* "provides a clear and consistent roadmap for interpreting § 1252(a)(2)(B)." *Ayanbadejo*, 517 F.3d at 276 (citing *Zhao*, 404 F.3d at 295). In *Zhao*, the Fifth Circuit concluded that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) prevented it from reviewing any decision "*specified under this subchapter to be in the discretion of* the Attorney General or the Secretary of Homeland Security.'" *Id.* (emphasis original) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). In *Ayanbadejo*, the Fifth Circuit held that 8 U.S.C. § 1252(a)(2)(B)(i) stripped district courts of jurisdiction over challenges to I-485 application denials. *See Ayanbadejo*, 517 F.3d at 276. The Fifth Circuit concluded that § 1252(a)(2)(B) placed I-485 application denials "'in the discretion of' immigration officials acting under the authority of the Attorney General." *Id.* This was

because § 1252(a)(2)(B)(i) "explicitly place[d] 'any judgment regarding the granting of relief under . . . section 1255, which provides the statutory authority for I-485 applications, in this category of discretionary decisions that no courts have jurisdiction to review." *Id.* As a result, both appellate and district courts "lack jurisdiction over determinations made with respect to an I-485 application for permanent resident status under § 1255." *Id.* at 279 (citing *Hadwani v. Gonzales*, 455 F.3d 798, 800 (5th Cir. 2006)).

Under *Ayanbadejo*, this court lacks the jurisdiction to grant Khalid the relief he seeks on his I-485 application. *See, e.g.*, *Khamisani v. Holder*, No. H-11-cv-3485, 2013 WL 1089202 (S.D. Tex. Mar. 14, 2013) ("By its own terms, Section 1252(a)(2)(B) deprives courts of jurisdiction to consider appeals of I-485 denials[.]"); *Aguilera v. Swacina*, No. 10-cv-21049 (JLK), 2010 WL 3768055 (S.D. Fla. Sept. 16, 2010) ("None of the bases for relief cited to by Plaintiff in his complaint—the Administrative Procedures Act; the Mandamus Act; or the Declaratory Judgment Act—permit the Court to make an end-run around the lack of jurisdiction over Defendants' denial of Plaintiff's I-485 application."), *aff'd sub. nom. Aguilera v. Dist. Dir.*, 423 F. App'x 916 (11th Cir. 2011) (nonprecedential); *Huerta v. Clinton*, No. 09-cv-3229, 2010 WL 565279, at *3 (S.D. Tex. Feb. 17, 2010).

Khalid cannot avoid this result. Khalid relies on *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215–17 (5th Cir. 2003), for the proposition that the denial of his I-485 application was a nondiscretionary application of the statute. *Mireles-Valdez* was decided before the REAL ID Act amended the INA. More importantly, in *Mireles-Valdez*, the Fifth Circuit held only that it had jurisdiction to review a nondiscretionary question of law. *Id.* In that case, the Immigration Judge denied an application for cancellation of removal "*as a matter of law* and *not* in the exercise of discretion." *Id.* (emphasis original). The Court of Appeals concluded that the

cancellation decision turned on a narrow and specific question of law: "whether an alien satisfies the continuous presence requirement is a nondiscretionary determination." *Id.* at 217. It was "a nondiscretionary determination because it involve[d] straightforward statutory interpretation and application of law to fact." *Id.* This case is different. The decision to deny an I-485 application is discretionary and unreviewable. *Ayanbadejo*, 517 F.3d at 276. Khalid criticizes *Ayanbadejo*'s analysis, but fails to identify a basis to find it distinguishable or to avoid its binding effect.

This court lacks jurisdiction to review an appeal from the denial of the I-485 application. This claim is dismissed.

### III. Khalid's Standing to Challenge the Denial of His Visa Petitions

#### A. The Legal Standard

The government moves to dismiss the challenge to the decision denying Khalid's I-129 and I-360 petitions for lack of standing as a visa beneficiary. "Article III of the United States Constitution grants jurisdiction to the federal courts only over claims that constitute 'cases' or 'controversies.'" *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (citing U.S. CONST. ART. III, § 2, cl. 1). "Subject matter jurisdiction includes the 'irreducible constitutional minimum of standing.'" *Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473, 475 (5th Cir. 2013) (unpublished) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Article III standing requires [1] an injury-in-fact [2] caused by a defendant's challenged conduct that is [3] redressable by a court." *K.P.*, 627 F.3d at 122 (citing *Lujan*, 504 U.S. at 560–61).

The Supreme Court "has long held that a person suing under the A[dministrative] P[rocedure] A[ct] must satisfy not only Article III's standing requirements but an additional test: The interest he asserts must be 'arguably within the zone of interests to be protected or regulated

by the statute' that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, – U.S. –, –, 132 S.Ct. 2199, 2210, 182 L.Ed. 211 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp.*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The prudential standing test "'is not meant to be especially demanding.'" *Id.* (quoting *Clarke Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed. 2d 757 (1987)). The Supreme Court has "conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." *Id.* "The test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quotation omitted).

## B.     The INA and the Related Regulations

The INA defines "immigrant" as "every alien except an alien who is within one of the following classes of nonimmigrant aliens." 8 U.S.C. § 1101(a)(15). The definition lists 21 "classes of nonimmigrant aliens." 8 U.S.C. § 1101(a)(15)(A)–(U). Form I-129 is used to petition for visas based on the various classes of nonimmigrant aliens and each one of these subclasses is governed by different statutory definitions, sections, and regulations.

For example, class H is the "specialty-occupation" category. *See* 8 U.S.C. § 1101(a)(15)(H). Subsection (i)(b) gives the definitions and statutory citations for a nonimmigrant worker's petition for a specialty-occupation visa. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). Aligning with the statutory definition in (H)(i)(b), a prospective employer seeking a specialty-occupation visa for an alien who is a prospective employee must certify in the H-1B visa petition that the alien meets those requirements.[1]

---

[1] "H-1B Visas are issued to non-immigrant aliens permitting them to enter the United States on a temporary basis to perform services in a 'specialty occupation.'" *Pedrozo v. Clinton*, 610 F. Supp. 2d

7

Khalid's I-129 petition invokes subclass R. The INA defines the R class of nonimmigrant alien, as follows:

> (15)(R) an alien, and the spouse and children of the alien if accompanying or following to join the alien, who—
>
> (i) for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and
>
> (ii) seeks to enter the United States for a period not to exceed 5 years to perform work described in subclause (I), (II), or (III) of *paragraph 27(C)(ii)*[.]

8 U.S.C. § 1101(a)(15)(R) (emphasis added). The italicized reference to Paragraph 27 in (ii) defines "special immigrant":

> (27) The term "special immigrant" means—
>
> (C) an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who
>
> (ii) seeks to enter the United States—
>
> (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,
>
> (II) before September 30, 2015, in order to work for the organization *at the request of the organization* in a

---

730, 731 n.1 (S.D. Tex. 2009) (citing 8 U.S.C. § 1101(a)(15)(H)(i)(b) (Supp. 2008)); *see also Morris v. Gonzales*, No 06-4383, 2007 WL 2740438, at *1 (E.D. Pa. Sept. 19, 2007); *EG Enters., Inc. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728, 730–31 (E.D. Mich. 2006). "All applications for 'specialty applications' . . . require evidence of the filing of a certified Labor Condition Application ('LCA') from the U.S. Department of Labor." *Hovhannisyan v. U.S. Dep't of Homeland Sec.*, 624 F. Supp. 2d 1135, 1139 (C.D. Cal. 2008) (citing 8 U.S.C. § 1182(n)(1); 8 C.F.R. § 214.2(h)(4)(iii)(B); 20 C.F.R. § 655.700(b)). Under the LCA, the employer must certify that by hiring the nonimmigrant employee, "the employer did not displace and will not displace a United States worker." 8 U.S.C. § 1182(n)(1)(E). After an H-1B visa is obtained for an alien employee, the employer can use Form I-140 to file an immigrant petition on the employee's behalf.

           professional capacity in a religious vocation or occupation, or

     (III) before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) *at the request of the organization* in a religious vocation or occupation[.]

8 U.S.C. § 1101(a)(27)(C)(ii) (emphasis added).

The regulations on "R" nonimmigrant religious workers state in part as follows:

 (r) Religious workers. This paragraph governs classification of an alien as a nonimmigrant religious worker (R-1).

   (1) To be approved for temporary admission to the United States, or extension and maintenance of status, for the purpose of conducting the activities of a religious worker for a period not to exceed five years, an alien must:

     (i) Be a member of a religious denomination having a bona fide non-profit religious organization in the United States for at least two years immediately preceding the time of application for admission;

     (ii) Be coming to the United States to work at least in a part time position (average of at least 20 hours per week).

     (iii) Be coming *solely as a minister or to perform a religious vocation or occupation* . . . (in either a professional or nonprofessional capacity);

     (iv) Be coming to or remaining in the United States *at the request of the petitioner* to work for the petitioner; and

     (v) *Not work in the United States in any other capacity*, except as provided in paragraph (r)(2) of this section.

   (2) An alien may work for more than one qualifying employer as long as each qualifying employer

> submits petition plus all additional required documentation as prescribed by USCIS regulations.

8 C.F.R. § 214.2(r) (emphasis added). There is little case law on the statutory requirements for R-1 visa petitions or the implementing statute or regulations.

### B. I-360 Petitions and Visas for Immigrant Religious Workers

The I-360 petition for an immigrant religious-worker visa is related to the R-1 petition for a nonimmigrant religious-worker visa. The INA limits immigrant religious-worker visas to "no more than 5,000 in each fiscal year." 8 U.S.C. § 1153(b)(4). To obtain an immigrant religious-worker visa, the worker's employer must file Form I-360. 8 C.F.R. § 204.5(m), *see Islamic and Educ. Cent. Ezan of Greater Des Moines v. Napolitano*, 826 F. Supp. 2d 1122, 1125 (S.D. Iowa 2011) ("An I-360 immigrant visa is a 'special immigrant religious worker' visa available to ministers and religious workers who operate in a professional or nonprofessional capacity in a religious vocation or occupation as defined in 8 U.S.C. § 1101(a)(27)(C).'" (citing 8 C.F.R. § 204.5(m)(2))). "The special immigrant worker visa process begins with a religious organization (the petitioner) filing an I-360 Petition on behalf of the intended religious worker (the beneficiary)." *Islamic and Educ. Cent. Ezan*, 826 F. Supp. at 1125 (citing 8 C.F.R. § 204.5(m)). "The petition is reviewed by the USCIS, and if it is approved, the beneficiary-religious worker can apply for a visa either from abroad or for adjustment of his or her status to a lawful permanent resident if he or she is already in the United States." *Id.*

The regulations promulgated under the INA specify what details the religious employer must provide in its I-360 Petition for an alien to be eligible for classification as a special immigrant religious worker. 8 C.F.R. § 204.5(a), (m). The requirements mirror those for the R-1 visa. The employer must certify that it is a "bona fide non-profit religious organization" or affiliate; that "the alien has worked as a religious worker for the two years immediately

10

preceding the filing of the application and is otherwise qualified for the position offered"; and that "the alien has been a member of the denomination for at least two years immediately preceding the filing of the application." 8 C.F.R. § 204.5(m)(7). The employer must also certify that "the alien *will not engage in secular employment, and any salaried or non-salaried compensation for the work will be paid to the alien by the attesting employer*; and that "the prospective employer has the ability and intention to compensate the alien at a level at which the alien and accompanying family members will not become public charges." *Id.* (emphasis added). The "petitioning organization"—the religious employer—must file evidence showing that the organization is or is affiliated with a religious denomination and that the employee is religiously qualified, and must file evidence of the religious employee's compensation and prior employment. *See* 8 C.F.R. § 204.5(m)(8)-(12).[2]

A religious employer may obtain an R-1 nonimmigrant visa for a religious worker to come to the United States temporarily. While the religious worker is in the United States, the employer may file an I-360 petition for a special immigrant visa which, if granted, provides the predicate for the religious employee to obtain an adjustment of status to lawful permanent resident. That is what Madrasah Islamiah unsuccessfully tried to do for Khalid here.

### C.   The Government's Challenge to Khalid's Standing

---

[2] The Ninth Circuit has helpfully summarized the requirements. "Up to 5,000 special immigrant visas may be granted to religious workers each year." *Ruiz-Diaz v. United States*, 618 F.3d 1055, 1058 (9th Cir. 2010) (citing 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C)) (footnote omitted). "This type of special immigrant visa is for ministers, religious workers in a professional capacity in a religious vocation or occupation, and religious workers in a religious vocation or occupation as defined in § 1101(a)(27)(C)." *Id.* "A person seeking a special immigrant religious worker visa may be overseas or in the United States . . . on a non-immigrant [R-1] visa[.]" *Id.* "As with all non-immigrant visas, the R-1 is issued for a definite duration; a nonimmigrant religious worker who holds an R-1visa may stay for a maximum of five years." *Id.* (citing 8 U.S.C. § 101(a)(15)(R)(ii); 8 C.F.R. § 214.2(r)). "The alien must depart when the five-year period has expired, unless he has sought to adjust status prior to the R-1 visa's expiration. If he does none of these things, the alien's status will be unlawful and he may begin to accrue an unlawful presence." *Id.* (citing 9 U.S.C. § 1255(k) (footnote omitted)).

The federal regulations implementing the INA define who is an "affected party":

> Meaning of affected party. [A]ffected party . . . means the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition.

8 C.F.R. § 103.3(a)(1)(iii)(B). The government argues that this regulation strips visa beneficiaries like Khalid of standing to challenge the denial of the R-1 and I-360 visa petitions in federal court. The government argues that the regulation makes it clear that the visa petitioner alone has legal standing to pursue such a challenge. The government cites several district court decisions concluding that the beneficiary of an I-140 petition lacked standing to challenge the denial of that petition.

Most of the cases that the parties cite, however, do not discuss the application of that regulation to the denial of an R-1 or a I-360 visa petition. Nor has the government argued or presented authority that all types of nonimmigrant visa petitions are the same as immigrant visa petitions. And even though the regulation strips a beneficiary of standing to pursue administrative appeals from the denial of certain visa petitions, it is unclear whether a beneficiary nonetheless has standing to seek review in federal court.

These distinctions are important because the INA requires an employer to certify and file different information for different visas. For example, the "skilled-worker immigration visa" requires a different showing than a "special immigrant" visa, as outlined above. One court has concluded that a visa beneficiary lacks prudential standing to challenge the denial of an I-140 petition because the statute—as opposed to agency regulation—requires the employer to prove that the alien's employment was necessary and would not adversely affect the wages and working conditions of similarly situated American workers. In *Pai v. United States Citizenship & Immigration Servs.*, 810 F. Supp. 2d 102, 110 (D. D.C. 2011), the court concluded that the

statute authorizing immigrant visas for "skilled workers" sought to protect the United States labor market, not to serve the visa beneficiary's interests. *Id.* Because the beneficiary's interests were outside the zone of interests that the statute sought to protect, the beneficiary of that type of visa lacked standing to sue in federal court.

Though relevant to the overall statutory scheme that covers Khalid, the cases dealing with decisions denying I-140 petitions address specific and different interests and requirements than Khalid's R-1 and I-360 petitions. The zone-of-interest test looks to the statutory provisions the plaintiff invokes. See *Valley Forge Christian Coll.*, 454 U.S. 464, 475 (1982) (explaining that plaintiff must be within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."). Most of the cases cited in the parties' briefs analyze standing in the context of I-140 and I-130 petitions, not R-1 and I-360 petitions. The case law the parties identify is nonetheless helpful in working through the standing issue for I-360 and R-1 petition-denial challenges. These cases show how the standing regulation has been interpreted and sheds light on the protections Congress included in the INA.

The Fifth Circuit has not yet decided whether a visa beneficiary has standing to file a federal court challenge to the denial of the petitions the employer filed. See *Gene's Mach., Inc. v. Dep't of Homeland Sec.*, V-11-cv-4(JDR), 2012 WL 1067557, at *5 (S.D. Tex. Mar. 28, 2012), *aff'd* 501 F. App'x 326 (5th Cir. 2012) (nonprecedential) (declining to address the standing issue because the dismissal of the claims mooted the issue); *Kale v. I.N.S.*, 37 F. App'x 90 (5th Cir. 2002) (nonprecedential) (finding no arguable basis to exercise mandamus jurisdiction because the visa beneficiary was not an affected party under the regulation and lacked standing in the underlying administrative proceeding).[3] The Eleventh Circuit has also declined to decide the issue. See

---

[3] A district court in this circuit has found no standing. See *Gene's Mach., Inc. v. Dep't of Homeland Sec.*, V-11-cv-4(JDR), 2012 WL 1067557, at *5 (S.D. Tex. Mar. 28, 2012) (concluding that I-140 visa

13

*Bonillo v. Sec., U.S. Dep't of Homeland Sec.*, 497 F. App'x 913, 916 (11th Cir. 2012) (nonprecedential) (remanding the question of whether the visa beneficiary had prudential standing to challenge the denial of his I-140 petition). The First Circuit has summarily concluded that the regulation strips visa beneficiaries of standing to administratively challenge denials of I-130 visa petitions. *Echevarria v. Keisler*, 505 F.3d 16, 18 (1st Cir. 2007) (Boudin, J).

The district courts have not consistently ruled on standing to challenge I-140 and I-130 petition denials. Some have concluded that the INA strips visa beneficiaries of standing to challenge the denial of the visa applications their employers filed. *See Kurapati v. U.S. Citizenship & Immigration Servs.*, 950 F. Supp. 2d 1230, 1233 (M.D. Fl. 2013) (dismissing claim by the visa beneficiary of an I-140 petition); *Viraj, LLC v. Holder*, No. 2:12-cv-00127(RWS), 2013 WL 1943431, at *5 (N.D. Ga. May 8, 2013) (same); *Betancur v. Roark*, No. 10-cv-11131(RWZ), 2012 WL 4862774, at *7 n.9 ("As beneficiary of the visa petition, Betancur apparently would not have standing to appeal the revocation of his I-140." (citing 8 C.F.R. 103.3(a)(1)(iii))); *Opoku-Agyeman v. Perez*, 886 F. Supp. 2d 1144, 1148 (W.D. Missouri 2012) (dismissing I-130 beneficiary's claim for lack of standing); *Illyabaev v. Kane*, 847 F. Supp. 2d 1168, 1177 (D. Ariz. 2012) (dismissing a I-140 beneficiary's claim for lack of standing to administratively appeal). Some district courts have avoided the issue. *See Khamisani v. Holder*, No. H-11-3485(NKJ), 2013 WL 1089202, at *4 (S.D. Tex. March 14, 2013) (noting that the Fifth Circuit has not decided the issue and that district courts have divided before dismissing a challenge to an I-140 petition denial without deciding if the visa beneficiary had standing because the employer would adequately represent Khamisani's interests). Some district courts—

---

beneficiary lacked standing because an "'an employer is the party that petitioned for the visa, so it, and not [the alien employee] is considered the proper party having a personal take in the outcome sufficient to warrant . . . invocation of federal court jurisdiction.'").

14

a minority—have found standing. *See, e.g., Cheeku, Inc. v. Napolitano*, No. 13-cv-1600(JWH), 2014 WL 321699, at *2 (N.D. Ill. Jan. 28, 2014) (concluding that visa beneficiary had standing to challenge denial of I-140 petition in administrative proceedings but not discussing prudential-standing restrictions on federal jurisdiction).

### D. Prudential Standing in this Case

Analyzing prudential standing requires asking whether Khalid's interests in remaining in the United States is within the zone of interests protected by the INA sections he invokes. The relevant INA provisions make clear that a religious employee's interest in coming to or remaining in the United States is, at best, marginally related to Congress's purpose in passing the statute.

As outlined in detail above, Khalid's R-1 and I-360 petitions are governed by 8 U.S.C. § (a)(27)(C)(ii)(I)-(III). The statute requires a bona fide religious employer to ask the beneficiary to come to the United States to work for the employer and forbids the beneficiary from working in any capacity other than a minister or to perform a religious occupation or vocation, professionally or nonprofessionally. The statute also limits the number of special immigrant visas to 5,000. The language of the statute and the cap on the number of special-immigrant visas, added to the INA's overall goal of protecting the American labor force, does not show a Congressional concern to further the interests of religious-worker aliens who seek to come to or remain in the United States. The statute does not show Congressional intent to make a resident alien here temporarily as a special nonimmigrant religious worker a plaintiff with standing to challenge the denial of the employer's R-1 or I-360 visa petition.[4]

---

[4] Had the religious employer failed or refused to submit an R-1 or I-360 visa petition, the religious worker could not sue the United States in federal court to procure one.

15

Khalid cites one district court case on standing relating to an I-360 petition. In *Shalom Pentecostal Church v. Napolitano*, No. 11-cv-4491(RMB/AMD), 2013 WL 162986, at *4 (D. N.J. Jan. 15, 2013), the court found that the visa beneficiary had prudential standing to challenge the denial of his I-360 petition, despite the regulation's language. In that case, the court noted that the government failed to raise the standing argument before summarily concluding that it "cannot say that the interests of the *intended beneficiaries* of special immigrant visas" were marginally related to or inconsistent with the statute. *Id. Shalom Pentecostal* offers no standing analysis and had no briefing or argument on the issue, and does not change the analysis or outcome here.

The court dismisses Khalid's claims challenging the R-1 and I-360 petition denials for lack of standing. This ruling does not affect this court's ability to reach the merits of Khalid's claims. The complaint has been amended to add Khalid's employer, the petitioner and the "affected party," as a plaintiff. This corrects the jurisdictional defect that the government identified in its motion to dismiss.

## IV.     Defendant Holder is Improperly Named as a Defendant

Khalid's initial complaint named the Attorney General, Eric Holder, as a defendant. The government argues that the Attorney General should be dismissed. After the government moved to dismiss, this court granted Khalid leave to amend the complaint to add his employer as a plaintiff. Khalid added his employer and deleted the Attorney General from the caption of the complaint. The court cannot determine whether that omission was oversight or concession. In any event, the government is correct that the Attorney General was improperly named as a defendant.


The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service under the Department of Justice and transferred its functions to the Department of Homeland Security under the USCIS, Immigration and Customs Enforcement, and United States Customs and Border Protections. The USCIS adjudicated Khalid's visa petitions and his application for adjustment of status. Those decisions were appealed to the AAO, which issued the final decisions. The agency and subagencies involved in that final determination are the DHS and USCIS, which contain the AAO. The Department of Justice and Attorney General are not proper defendants. *See, e.g., Khamisani v. Holder,* No. H-11-cv-3485, 2013 WL 1089202, at *5 (S.D. Tex. March 14, 2013); *Hong Wang v. Chertoff,* 550 F. Supp. 2d 1253, 1258 (W.D. Wash. 2008).

The Attorney General, Eric Holder, is dismissed from this action. In addition, Janet Napolitano's term as Secretary of Homeland Security ended on September 6, 2013. Rand Beers, the acting Secretary of Homeland Security, is substituted. Fed. R. Civ. Proc. 25(d) ("An action does not abate when a public officer . . . ceases to hold office while the action is pending. . . . The officer's successor is automatically substituted as a party."); *see also Hamed v. Beers,* No. 4:13-cv-00516(HEA), 2013 WL 6096511 (E.D. Mo. Nov. 20, 2013); *Kumar v. Holder,* No. 12-cv-5261(SJF), 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013); *Ali v. Beers,* No. 12-cv-11384(FDS), 2013 WL 5587947 (D. Mass. Oct. 9, 2013).

V.  **Conclusion**

The government's motion to dismiss is granted. A status conference is set for **March 12, 2014** at 5:00 p.m.

Signed on February 25, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge