## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MADRASAH ISLAMIAH, INC., and | § | |
| HAFIZ MATIULLAH KHALID, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3492 |
| | § | |
| DEP'T OF HOMELAND SECURITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

The Madrasah Islamiah and Hafiz Matiullah Khalid challenge the denial of certain I-129 and I-360 Petitions and an I-485 Application that the Madrasah Islamiah filed on Khalid's behalf. The defendants, the Department of Homeland Security and the United States Citizenship and Immigration Services ("USCIS"), moved for summary judgment. (Docket Entry No. 38). The plaintiffs responded and cross-moved for summary judgment, and the defendants replied. (Docket Entry Nos. 49, 54). The court heard oral argument on the motions. Based on the pleadings, the motions and responses, the record, the parties' arguments, and the applicable law, the court grants the defendants' motion for summary judgment and denies the plaintiffs' motion for summary judgment. The reasons are explained below.

### I.    Background

Khalid came to the United States in August 2003 on a nonimmigrant visitor visa (B-2). In January 2004, the American Society for Islamic Awareness ("ASIA") filed a Form I-129 Petition for a Nonimmmigrant Religious Worker for Khalid. (CAR 899, 1079, 1484, 1560–61). The USCIS approved the I-129 Petition on October 12, 2004. (*Id.*).

ASIA did not have the money to continue paying Khalid's salary.  In May 2005, Khalid began working as a Quranic and Religious Education Teacher/Instructor at a religious school the Madrasah Islamiah operated.  The Madrasah Islamiah filed an I-129 Petition on Khalid's behalf on April 12, 2005.  (CAR 212, 300).  The USCIS approved this I-129 Petition on April 25, 2005.

On July 22, 2005, the Madrasah Islamiah filed a Form I-360 Petition for Special Immigrant for Khalid, seeking to classify him as a special immigrant religious worker.  (CAR 986–90).  The USCIS sent the Madrasah Islamiah a "Request for Evidence," asking about Khalid's prior work experience and the Madrasah Islamiah's nonprofit status.  (CAR 991).  The Madrasah Islamiah responded on August 8, 2005, sending much of the information the USCIS requested, but omitting both Khalid's employment records for the first year following his arrival in the United States and the requested verification from the IRS that the Madrasah Islamiah was certified as a Section 501(c)(3) nonprofit.  (CAR 1034–35).

The USCIS denied the I-360 Petition on August 18, 2005, stating that Khalid was not eligible for special immigrant status because his employment from September 2003 to October 2004 was insufficiently documented.  The USCIS stated that it could not verify whether Khalid had been "continuously carrying on the religious occupation specified in the Petition for the two years preceding filing," or whether the Madrasah Islamiah was a qualified nonprofit, as the applicable regulations required.  (CAR 983–85).

In November 2006, the Madrasah Islamiah filed another I-360 Petition for Khalid.  (CAR 131, 977).  In addition to the documents sent with the previous Petition, the Madrasah Islamiah sent the USCIS a letter from the IRS verifying the Madrasah Islamiah's tax-exempt status, most of its monthly bank statements for the two preceding years, copies of checks it wrote to Khalid in 2005

and 2006, and Khalid's W-2 and 1040 Forms from 2005 and 2006.  (CAR 812–26).  The Madrasah Islamiah told the USCIS that it paid Khalid $2,000 per month and gave him housing valued at $500 per month, with the Madrasah Islamiah paying for the utilities.  (CAR 769–71).

The USCIS responded with a Request for Evidence in December 2006.  This Request asked the Madrasah Islamiah to provide additional information about Khalid's employment history and income; his qualifications for, and responsibilities in, his current position; and the Madrasah Islamiah's ability to pay him.  (CAR 136–37).  The Madrasah Islamiah responded in February 2007, submitting additional information and again claiming that it paid Khalid $2,000 per month and provided him free housing with utilities included.  (CAR 139, 146).

Khalid's R-1 nonimmigrant status expired in early May 2007.  More than two weeks later, the Madrasah Islamiah filed a new I-129 Petition on Khalid's behalf.  (CAR 1422–28).  In this Petition, the Madrasah Islamiah stated that it would pay Khalid $2,200 per month and would provide him free housing with utilities included.  The Madrasah Islamiah also provided its financial statements from 2005, 2006, and 2007.  The USCIS claims that this Petition was untimely because it was filed after Khalid's nonimmigrant status expired.

In February 2009, the USCIS sent the Madrasah Islamiah a Request for Evidence in connection with the I-360 Petition filed in November 2006.  This Request asked the Madrasah Islamiah to supplement the administrative record with a description of Khalid's current work and past experience as a religious teacher.  (CAR 158–61). The Madrasah Islamiah responded with an attestation about the school, its employment of immigrant and nonimmigrant workers, and Khalid's work schedule and duties.  The Madrasah Islamiah also sent copies of checks it wrote Khalid between June 2005 and March 2009, as well as Khalid's W-2 Forms for 2007 and 2008.  (CAR

3

228–37, 302–03, 397–98).  ASIA also submitted information about Khalid's earlier employment there.  (CAR 218, 267, 395).

In May 2009, the Madrasah Islamiah filed another I-129 Petition for Khalid, seeking to extend his nonimmigrant status.  (CAR 481).  The Madrasah Islamiah sent the USCIS Khalid's tax forms for 2008, additional information on the Madrasah Islamiah's nonprofit status, and a description of Khalid's responsibilities.  The Madrasah Islamiah stated that it paid Khalid $2,000 per month and provided him free housing with utilities included.  (CAR 488–503).  In July 2009, Khalid filed an I-485 Application for adjustment of status under the I-360 Petition.  (CAR 909–914).

The USCIS denied both of Khalid's pending I-129 Petitions in November 2009.  (CAR 475–81; 1415–22).  The USCIS stated that it lacked information needed to confirm that Khalid could be classified as a religious professional; that the Madrasah Islamiah had not shown that Khalid was performing duties "above and beyond those of a caring member of the denomination"; and that the Madrasah Islamiah had not submitted evidence showing that Khalid had the educational qualifications necessary for a professional position.  (*Id.*).

In December 2009, the Madrasah Islamiah appealed the denials of Khalid's I-129 Petitions to the Administrative Appeals Office ("AAO").  The Madrasah Islamiah argued that the USCIS improperly required Khalid to be employed in a professional capacity.  It asserted that Khalid did not need a professional degree and that he qualified for his nonprofessional status because he had advanced skills necessary for his position that most members of the denomination did not possess.  (CAR 1384–95).  The Madrasah Islamiah also argued that instead of denying the Petitions, the USCIS should have sent another Request for Evidence.

In January 2010, the USCIS denied the I-360 Petition the Madrasah Islamiah had filed on

Khalid's behalf in November 2006, and, by implication, the I-485 Application based on Khalid's I-360 status.  (CAR 39–43, 131, 153–57).  The USCIS asserted that the Madrasah Islamiah had failed to provide verifiable evidence on how it intended to compensate Khalid, that there were discrepancies in the evidence of Khalid's salary in 2007 and 2008, and that the salary the evidence showed was below the poverty level.  (CAR 41–42, 155–56).  The USCIS also stated that the Madrasah Islamiah did not show that Khalid was qualified by professional or work experience to perform the professional religious work identified in the I-360 Petition, and noted that Khalid's other duties did not require religious qualifications.  (*Id.*).

In February 2010, the Madrasah Islamiah appealed this denial of the 2006 I-360 Petition. The Madrasah Islamiah argued that it had complied with all Requests for Evidence, that Khalid was not a professional religious worker, that the USCIS relied on the wrong regulations and made mistakes in evaluating the information the Madrasah Islamiah submitted, and that the USCIS had failed to submit a Notice of Intent to Deny before rejecting the Petition.  (CAR 23–32).  The Madrasah Islamiah explained the discrepancies in Khalid's salary by stating that it had loaned him $5,000 in cash in 2008 and had made deductions from his salary to repay it.  (CAR 53–56).

In August 2011, the AAO remanded the USCIS's denial of the two I-129 Petitions, finding that the USCIS had failed to articulate specific, defensible grounds.  (CAR 1374–84).  The AAO nonetheless noted that the record cast doubt on the legitimacy of the Petitions.  The AAO affirmed the USCIS's denial of the November 2006 I-360 Petition, finding that the information the Madrasah Islamiah submitted was of questionable authenticity and had discrepancies and inconsistencies, particularly about the Madrasah Islamiah's and Khalid's finances.  (CAR 1–14).

The USCIS sent the Madrasah Islamiah a Request for Evidence in November 2011 in

connection with the remanded I-129 Petitions.  The Requests sought verification that Khalid lived

in free housing that the Madrasah Islamiah provided and controlled.  The Request also sought

clarification of discrepancies between the salary stated on Khalid's W-2 forms and the salary shown

by the checks the Madrasah Islamiah wrote Khalid in 2007 and 2008.  (CAR 1118–24; 1367–73).

The Request asked for additional information about the Madrasah Islamiah.  It also asked  for

clarification of the dates Khalid worked at ASIA and at the Madrasah Islamiah, and for an

explanation of an apparent gap between Khalid's entry into the United States in August 2003 and

the start of his employment with ASIA in October 2004.  (*Id.*).  Madrasah Islamiah responded to this

Request for Evidence in January 2012 by providing information about its congregation, its facilities,

its finances, and its other alien employees.  (CAR 1125–1230).

The USCIS denied the remanded I-129 Petitions in March 2012 and certified the case to the

AAO for review.  (CAR 1356–66).  The USCIS stated in its briefs to the AAO that the Petitions

were denied for six reasons:

> 1)      The Madrasah Islamiah did not provide verifiable evidence
> about the size of its membership, (CAR 1358–59).
> 2)      The Madrasah Islamiah provided incomplete and
> contradictory information about the number of employees it had and
> their responsibilities, (CAR 1359–60).
> 3)      The Madrasah Islamiah stated that it had two locations but
> only provided information about one of them, (CAR 1361–62).
> 4)      The Madrasah Islamiah failed to submit verifiable evidence
> about the alien workers it employed and the number of immigration
> petitions it had filed in the past five years, (CAR 1362).
> 5)      The Madrasah Islamiah did not explain certain financial
> discrepancies, including how Khalid would be compensated, why
> Khalid's W-2 Forms for 2004 to 2006 and 2011 did not list the
> housing expenses the Madrasah Islamiah claimed were part of his
> compensation, why his address on his W-2 Forms was the same in
> 2005 and 2006 even though two different organizations said they
> provided him with housing they controlled in each year, why the
> checks to Khalid did not add up to the amounts declared on his W-2

6

> Forms, and why the Madrasah Islamiah's financial statements
> showed a $164,427 difference between the balance at the end of 2005
> and at the beginning of 2006, (CAR 1362–64).
>
> 6)      Because there was a gap in Khalid's employment history in
> September 2003, the Madrasah Islamiah had not established that
> Khalid came to the United States solely to work in a religious
> occupation, (CAR 1366).

The USCIS also claimed that the I-129 Petition filed in May 2007 could not be considered because it was filed two weeks after Khalid's immigration status had expired.  (CAR 1366).

The AAO affirmed the denial of the I-129 Petitions in August 2012.  (CAR 1344–55, 1384). It based its decision on contradictions in the information the Madrasah Islamiah provided about Khalid's salary and housing arrangements; the $164,427 discrepancy in the Madrasah Islamiah's bank statements and the failure to respond to Requests for Evidence about those bank statements; the Madrasah Islamiah's failure to provide information on the nonresident aliens it employed and immigration petitions it had filed in the five prior years; the Madrasah Islamiah's failure to provide evidence about both of its locations; gaps in Khalid's employment history and his failure to provide an itemized record of his employment from the Social Security Administration, as the USCIS had requested; and the untimeliness of one of his I-129 Petitions.

Khalid and the Madrasah Islamiah filed this suit, challenging the denial of the Petitions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201.  The plaintiffs rely on the administrative record and have submitted additional information that they claim resolves doubts about Khalid's entitlement to the immigration status sought in each Petition.

The court previously granted the defendants' motion to dismiss Attorney General Eric Holder as a defendant, and to dismiss the plaintiffs' claims related to the denial of another

immigration Petition.  The parties have cross-moved for summary judgment on the remaining claims.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted).  "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant

must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (internal quotation marks and alteration omitted).] Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

### B.      Review of the Agency Determinations

Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (quotation omitted). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.* In reviewing a challenge to the agency's decision, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fed Power Commission v. Transcontinental Gas Pipeline Corp.*, 423 U.S. 326, 331 (1976); *see also Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (quoting *Fed*

*Power Commission*, 423 U.S. at 332)).

"It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).  "A denial by [the USCIS] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *Id.* (citing 5 U.S.C. § 706(2)(a).  While the district court's role is to ensure that the USCIS engaged in "reasoned decision-making," the agency is "entitled to considerable deference in its interpretation of the governing statute."  *Id.* (internal citations omitted).  The burden is on the petitioner to show by a preponderance of the evidence that the alien "is entitled to the nonimmigrant, immigrant, [or] special immigrant . . . status claimed."  8 U.S.C. § 1361.  "'[T]o obtain a reversal of the [agency's] decision[,] the alien must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to arrive at his conclusion,' and that "the evidence must not merely support the alien's conclusion but must compel it.'"  *Brown v. Napolitano*, 391 Fed. App'x 346, 350 (5th Cir. 2010) (quoting *Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1160 (5th Cir. 1992)).

### C.  The I-129 Petitions

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, defines "immigrant" as "every alien except an alien who is within one of the following classes of nonimmigrant aliens." 8 U.S.C. § 1101(a)(15).  The definition lists 21 "classes of nonimmigrant aliens."  8 U.S.C. § 1101(a)(15)(A)–(U).  I-129 Petitions are for visas based on the various classes of nonimmigrant aliens, each governed by different statutory definitions, sections, and regulations.

Khalid's I-129 Petition invokes subclass R.  The INA defines the R class of nonimmigrant alien as follows:

(R)        an alien, and the spouse and children of the alien if accompanying or following to join the alien, who —

    (I)     for the 2 years immediately preceding the time of Application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and

    (ii)    seeks to enter the United States for a period not to exceed 5 years to perform work described in subclause (I), (II), or (III) of *paragraph 27(C)(ii)*[.]

8 U.S.C. § 1101(a)(15)(R) (emphasis added).  The italicized reference to Paragraph 27 in (ii) defines "special immigrant," as follows:

(27)    The term "special immigrant" means —

    . . .

(C)    an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who

    . . .

    (ii)    seeks to enter the United States —

        (I)    solely for the purpose of carrying on the vocation of a minister of that religious denomination,

        (II)   before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or

        (III)  before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation[.]

8 U.S.C. § 1101(a)(27)(C)(ii).

The regulations on "R" nonimmigrant religious workers state in part as follows:

(r)     Religious workers.  This paragraph governs classification of

11

an alien as a nonimmigrant religious worker (R-1).

(1)     To be approved for temporary admission to the United States, or extension and maintenance of status, for the purpose of conducting the activities of a religious worker for a period not to exceed five years, an alien must:

(I)     Be a member of a religious denomination having a bona fide non-profit religious organization in the United States for at least two years immediately preceding the time of application for admission;

(ii)     Be coming to the United States to work at least in a part time position (average of at least 20 hours per week).

(iii)     Be coming solely as a minister or to perform a religious vocation or occupation . . . (in either a professional or nonprofessional capacity);

(iv)     Be coming to or remaining in the United States at the request of the petitioner to work for the petitioner; and

(v)     Not work in the United States in any other capacity, except as provided in paragraph (r)(2) of this section.

(2)     An alien may work for more than one qualifying employer as long as each qualifying employer submits a petition plus all additional required documentation as prescribed by USCIS regulations.

8 C.F.R. § 214.2(r).

### D.     The I-360 Petitions

An I-360 Petition for an immigrant religious-worker visa is related to the R-1 Petition for a nonimmigrant religious-worker visa.  The INA limits immigrant religious-worker visas to "no more than 5,000 in each fiscal year."  8 U.S.C. § 1153(b)(4).  To obtain an immigrant religious-worker visa, the worker's employer must file an I-360 Petition.  8 C.F.R. § 204.5(m); *see Islamic and Educ. Ctr. Ezan of Greater Des Moines v. Napolitano*, 826 F. Supp. 2d 1122, 1125 (S.D. Iowa 2011) ("An I-360 immigrant visa is a 'special immigrant religious worker' visa available to

ministers and religious workers who operate in a professional or nonprofessional capacity in a religious vocation or occupation as defined in 8 U.S.C. § 1101(a)(27)(C).'" (citing 8 C.F.R. § 204.5(m)(2)). "The special immigrant worker visa process begins with a religious organization (the petitioner) filing an I-360 Petition on behalf of the intended religious worker (the beneficiary)." *Islamic and Educ. Ctr. Ezan*, 826 F. Supp. 2d at 1125 (citing 8 C.F.R. § 204.5(m)). "The petition is reviewed by the USCIS, and if it is approved, the beneficiary-religious worker can apply for a visa either from abroad or for adjustment of his or her status to a lawful permanent resident if he or she is already in the United States." *Id.*

The regulations under the INA specify what details the religious employer must provide in its I-360 Petition for an alien to be eligible for classification as a special immigrant religious worker. 8 C.F.R. § 204.5(a), (m). The requirements mirror those for the R-1 visa under an I-129 Petition. The employer must certify that it is a "bona fide non-profit religious organization" or affiliate; that "the alien has worked as a religious worker for the two years immediately preceding the filing of the application and is otherwise qualified for the position offered"; and that "the alien has been a member of the denomination for at least two years immediately preceding the filing of the application." 8 C.F.R. § 204.5(m)(7). The employer must also certify that "the alien will not engage in secular employment, and any salaried or non-salaried compensation for the work will be paid to the alien by the attesting employer; and" that "the prospective employer has the ability and intention to compensate the alien at a level at which the alien and accompanying family members will not become public charges." *Id.* The "petitioning organization" — the religious employer — must file evidence showing that the organization is or is affiliated with a religious denomination and that the

employee is religiously qualified, as well as evidence of the religious employee's compensation and prior employment.  *See* 8 C.F.R. § 204.5(m)(8)–(12).[1]

A religious employer may obtain an R-1 nonimmigrant visa for a religious worker to come to the United States temporarily.  While the religious worker is in the United States, the employer may file an I-360 Petition for a special immigrant visa.  If granted, the visa provides the predicate for the worker to obtain an adjustment of status to that of a lawful permanent resident.  This is what the Madrasah Islamiah tried to do for Khalid.

## III.    Analysis

The plaintiffs allege that the USCIS acted arbitrarily by denying the I-129 and I-360 Petitions without sending additional Requests for Evidence.  Alternatively, the plaintiffs argue that the USCIS was barred from reexamining Khalid's status as a religious worker and  that some of the regulations the USCIS relied on in denying the Petitions were *ultra vires*.  The plaintiffs argue that they satisfied their burden to show by a preponderance of the evidence that Khalid was entitled to the status sought.

Each of these arguments is examined in turn.

---

[1]  The Ninth Circuit has summarized the requirements.  "Up to 5,000 special immigrant visas may be granted to religious workers each year."  *Ruiz-Diaz v. United States*, 618 F.3d 1055, 1058 (9th Cir. 2010) (citing 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C)) (footnote omitted).  "This type of special immigrant visa is for ministers, religious workers in a professional capacity in a religious vocation or occupation, and religious workers in a religious vocation or occupation as defined in § 1101(a)(27)(C)."  *Id.*  "A person seeking a special immigrant religious worker visa may be overseas or in the United States . . . on a non-immigrant [R-1] visa[.]"  *Id.*  "As with all non-immigrant visas, the R-1 is issued for a definite duration; a nonimmigrant religious worker who holds an R-1 visa may stay for a maximum of five years."  *Id.* (citing 8 U.S.C. § 101(a)(15)(R)(ii); 8 C.F.R. § 214.2(r)).  "The alien must depart when the five-year period has expired, unless he has sought to adjust status prior to the R-1 visa's expiration.  If he does none of these things, the alien's status will be unlawful and he may begin to accrue an unlawful presence."  *Id.* (citing 9 U.S.C. § 1255(k) (footnote omitted)).

**A.     The Argument That the USCIS Had to Submit Additional Requests for Evidence**

The defendants argue that the petitions were properly denied because the Madrasah Islamiah and Khalid failed to provide the information needed to verify compliance with the relevant statutes and regulations, despite the USCIS's multiple Requests for Evidence.  If a petitioner does not initially include information demonstrating eligibility for the immigration status sought, the "USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility," or may send a Request for Evidence.  8 C.F.R. § 103.2(b)(8)(ii).  If "the petitioner or applicant fails to respond to a request for evidence, by the required date, the benefit request may be summarily denied as abandoned, denied based on the record, or denied for both reasons."  8 C.F.R. § 103.2(b)(13)(I). "Where an applicant or petitioner does not submit all requested additional evidence and requests a decision based on the evidence already submitted, a decision shall be issued based on the record. Failure to submit requested evidence which precludes a material line of inquiry shall be grounds for denying the benefit request." 8 C.F.R. § 103.2(b)(14).

The record shows that the plaintiffs did not fully respond to the USCIS's Requests for Evidence.  The plaintiffs repeatedly provided incomplete or contradictory information in their responses to the Requests.  Despite repeated Requests, the USCIS did not have complete information about Khalid's employment history, salary, or housing situation; the Madrasah Islamiah's two locations; previous aliens who worked at the Madrasah Islamiah and for whom the Madrasah Islamiah filed immigration petitions; or the Madrasah Islamiah's finances.

The plaintiffs argue that because they eventually submitted most, although not all, of the evidence the USCIS requested, the agency was not entitled under 8 C.F.R. § 103.2(b)(13) and (14) to deny Khalid's Petitions unless the failure to submit additional information precluded a material

line of inquiry.   Courts around the country have held that if a petitioner does not fully respond to

a Request for Evidence, the USCIS does not act arbitrarily or capriciously by making a decision

based only on the evidence that is available.  *See Hakimuddin v. Dep't of Homeland Sec.*, 2009 WL

497141 (S.D. Tex. Feb. 26, 2009) (holding that the plaintiffs' failure to submit satisfactory responses

to the Requests for Evidence justified the denial of the visa application); *Calexico Warehouse, Inc.*

*v. Neufeld*, 259 F. Supp. 2d 1067 (S.D. Cal. 2002) (holding that the plaintiff's failure fully to comply

with the Request for Evidence was sufficient for the INS, in its discretion, to revoke the petition);

*Chung Hak Hong v. U.S. Dep't of Homeland Sec. Citizenship & Immigration Servs.*, 662 F. Supp.

2d 1195, 1199 (C.D. Cal. 2009) (the failure to respond to Requests for Evidence justified dismissing

the petition).  The case law is clear that the USCIS was entitled to make its decision based on the

information the Madrasah Islamiah provided.  The USCIS was not required to send additional

Requests for Evidence before deciding, including deciding to deny the petitions.

### B.    The Argument That Preclusion Barred the USCIS's Review

The plaintiffs claim that the USCIS's earlier determinations that Khalid qualified as a

religious worker and was entitled to approval of his I-129 Petition precluded the agency from later

reexamining Khalid's religious worker status and determining that he did not qualify.   But

preclusion does not arise from a previous agency determination that a petitioner met eligibility

requirements.   *See, e.g.*, *Andrade v. Gonzales*, 459 F.3d 538, 545 (5th Cir. 2006) (because

"applications for adjustment of status are not normally adversarial in nature, and do not involve an"

immigration judge, the petitioner's "adjustment of status was not adjudicatory in nature, and thus

is not entitled to res judicata effect." (citing *Medina v. INS*, 993 F.2d 499, 503 (5th Cir. 1993)));

*Cospito v. Attorney Gen.*, 539 F.3d 166, 171 (3d Cir. 2008); *Matter of Church of Scientology*, 19

I&N Dec. 593, 597 (BIA 1988) ("this Service is not required to approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals which may have been erroneous").  The USCIS's earlier decisions that Khalid qualified as a religious worker and was entitled to approval of his I-129 Petition were not adjudicatory in nature and do not have preclusive effect.  The prior determinations did not bar the USCIS from reevaluating Khalid's status in reviewing his later Petitions.

**C.    The Argument That the Regulations Were *Ultra Vires***

The Madrasah Islamiah argues that 8 C.F.R. § 204.5(m)(4), (10), and (11), and 8 C.F.R. § 214(r)(11)(I) and (12)(ii) are *ultra vires*.[2]  The Madrasah Islamiah did not present this argument to the AAO or to the USCIS, but instead claimed that it had complied with all applicable regulations.  Assuming that the *ultra vires* argument did not have to be raised before the AAO,[3] this argument

---

[2]  At least two courts have found that the requirement contained in 8 C.F.R. § 204.5(m)(4) and (11) that a petitioner have lawful immigration status and legal employment during the preceding years were *ultra vires*.  *See Shalom v. Pentecostal Church v. Napolitano*, No. 11-4491, 2013 WL 162986, at *2 (D.N.J. Jan. 15, 2013); *Shia Assoc. of Bay Area v. United States*, 849 F. Supp. 2d 916, 922 (N.D. Cal. 2012).  The USCIS has specified that it did not base the denial on those parts of the regulations.  The remaining regulations the plaintiffs challenge as *ultra vires* involve the religious worker's compensation.  USCIS may investigate an employer's ability to pay the petitioner and the sufficiency of the proposed wage.  *See Woody's Oasis v. Rosenberg*, No. 1:13-cv-367, 2014 WL 413503, at *3 (W.D. Mich. Feb. 4, 2014) ("The Court finds this long-standing precedent persuasive, and agrees that the USCIS has the authority to investigate an employer's ability to pay").  Courts have upheld the regulatory requirement that the employer verify how it intends to compensate the worker.  *See id.*; *Masonry Masters, Inc. v. Thornbugh*, 875 F.2d 898, 901 (D.C. Cir. 1989).

[3]  *Compare Canchola-Velez v. Filip*, 307 Fed. App'x 871, 872 (5th Cir. 2009) (holding that the court lacked jurisdiction to review claims that certain regulations were *ultra vires* because the petitioner had not raised those arguments before the Board of Immigration Appeals (unpublished) (citing *Wang v. Ashcroft*, 260 F.3d 448, 451–53 (5th Cir. 2001))); *with Rivera-Durmaz v. Chertoff*, 456 F. Supp. 2d 943, 952 (N.D. Ill. 2006) ("The sole express reference to exhaustion in the Immigration and Nationality Act itself pertains only to removal orders."); *Patel v. Johnson*, 2 F. Supp. 3d 108, 125–27 (D. Mass. 2014) (considering procedural deficiencies in AAO's review process).

does not affect the outcome.  The USCIS's decision to deny Khalid's petitions rested on multiple grounds, including grounds that did not rely on the regulations the plaintiffs claim are *ultra vires*.[4]

Even if the plaintiffs' arguments that certain regulations were *ultra vires* were properly asserted and had merit, the USCIS's denial of the petitions could only be overturned if its determination that the plaintiffs did not show compliance with the remaining regulations and the statutes was arbitrary and capricious.  *Nat'l Hand Tool Corp.*, 889 F.2d at 1475.  The USCIS's denial of the petitions was also based on the plaintiffs' failure to provide information on the Madrasah Islamiah's finances and Khalid's salary and compensation, as required by 8 C.F.R. §§ 204.5(g)(2), 204.5(m)(7), and 214.2(r)(8), and the unreliability of the information it provided, under 8 U.S.C. § 1154(b).[5]

### C.   The Argument That the Plaintiffs Complied with the Regulations

The petitioner must submit evidence demonstrating compliance with applicable statutes and regulations.  *Hakimuddin v. Dep't of Homeland Sec.*, No. CIV 4:08-CV-1261, 2009 WL 497141 (S.D. Tex. Feb. 26, 2009).  If the petitioner does not submit such evidence, or if the USCIS determines that the evidence presented is incomplete, inaccurate, or not credible, the petition may be denied.  *See Hawaii Saeronam Presbyterian Church v. Ziglar*, 243 Fed. App'x 224, 226 (9th Cir. 2007) ("The AAO was legitimately concerned by inconsistencies in HSPC's financial records and

---

[4]  The plaintiffs do not argue that 8 C.F.R. § 204.5(m)(7); 8 C.F.R. § 214.1(c)(4);  8 C.F.R. § 214.2(g)(2); or 8 C.F.R. § 214.2(r)(8) were *ultra vires*.  The USCIS's decision also rested on 8 U.S.C. § 1154(b).

[5]  The USCIS also argued that it properly denied the petitions because the Madrasah Islamiah provided incomplete information about its second location, its alien employees, and Khalid's housing arrangements, and because the May 2007 I-129 Petition was untimely.  The plaintiffs and the defendants dispute how the relevant regulations should be interpreted and applied to the facts.  The grounds for affirming the denials discussed below are based on applying regulations with clear and undisputed meanings.  Because the court finds these grounds sufficient to uphold the agency's decision, it is unnecessary to address the alternate bases for the USCIS's decision.

by HSPC's failure to provide tax documents, bank statements, or similar information to establish Kim's full-time employment.  We agree with the district court that the discrepancies in the record, and HSPC's failure to account fully for those discrepancies, provide a sufficient basis for the AAO's decision.").

A petitioner is required under 8 C.F.R. § 204.5(g)(2) to provide evidence of its "ability to pay the proffered wage" to the alien.  The employer can satisfy this requirement by sending "copies of annual reports, federal tax returns, or audited financial statements."  8 C.F.R. § 204.5(g)(2).  The financial information the Madrasah Islamiah provided contained a discrepancy that was not explained.  The balance in its account at the end of 2005 was $164,427 less than the balance at the start of 2006.  The USCIS asked for clarification in a Request for Evidence.  The Madrasah Islamiah did not provide evidence explaining the difference.  When information submitted is inaccurate or not credible, the USCIS is entitled to construe any discrepancy against the petitioner, *see Love Korean Church v. Chertoff*, 549 F.3d 749, 755 (9th Cir. 2008) ("any inconsistency must be resolved against the petitioner"), and to reject the petition entirely, *see Hawaii Saeronam Presbyterian Church*, 243 Fed. App'x at 226 ("the discrepancies in the record, and [the Petitioner's] failure to account fully for those discrepancies, provide a sufficient basis for the AAO's decision").  The failure to clarify its contradictory financial statements meant that the Madrasah Islamiah did not show compliance with 8 C.F.R. § 204.5(g)(2).  *See id.*

The Madrasah Islamiah now argues that the discrepancy was the result of a "typing error," and that the ending balance in 2005 should have been $95,000 higher.  This evidence was not submitted to the USCIS and is not appropriately considered in this court's review.  And it still does not fully explain the $164,427 discrepancy.

To demonstrate eligibility in an I-360 Petition, the employer must attest to "the title of the position offered to the alien, the complete package of salaried or non-salaried compensation being offered, and a detailed description of the alien's proposed daily duties."  8 C.F.R. § 204.5(m)(7)(vi). For I-129 Petitions, the employer must also attest to the details of the alien's compensation.  8 C.F.R. § 214.2(r)(8)(vii).  The Madrasah Islamiah told the USCIS that it paid Khalid $2,000 per month in salary in both 2007 and 2008.  Khalid's W-2 Forms and 1040 tax returns both showed income of $24,000 for each year.  But the copies of the checks the Madrasah Islamiah wrote to Khalid  and sent to the USCIS showed that Khalid was paid $24,400 in 2007 and $25,200 in 2008 — in total, $1,600 more than the Madrasah Islamiah attested to and more than Khalid's tax forms stated he was paid.

In response to a Request for Evidence, the Madrasah Islamiah told the USCIS that the discrepancy was due to a $5,000 cash loan to Khalid.  A $5,000 loan does not explain the extra $1,600 Khalid received in salary from the Madrasah Islamiah in 2007 and 2008.  The USCIS also noted that was there no check from the Madrasah Islamiah to Khalid for March 2008, which raised a question as to whether Khalid worked that month.  The Madrasah Islamiah did not offer an explanation for the missing check.

These discrepancies justified the USCIS's finding that the Madrasah Islamiah did not show how Khalid was compensated, as required to satisfy the regulatory requirements for approval of the I-129 or I-360 Petitions.  *See Hawaii Saeronam Presbyterian Church*, 243 Fed. App'x at 226 ("the discrepancies in the record, and [the Petitioner's] failure to account fully for those discrepancies, provide a sufficient basis for the AAO's decision"); *Love Korean Church*, 549 F.3d at 755 ("any inconsistency must be resolved against the petitioner"); *see also* 8 U.S.C. § 1154(b) ("if [the

Attorney General] determines that the facts stated in the Petition are true," he shall approve the Petition).

The regulations also require the employer to attest to the details of the worker's salaried and unsalaried compensation. 8 C.F.R. §§ 204.5(m)(7)(vi), 214.2(r)(8)(viii). The Madrasah Islamiah stated that Khalid's compensation included both a salary and free housing valued at $500 per month, with the Madrasah Islamiah paying for the utilities. But Khalid's tax filings showed that he did not move when he started working at the Madrasah Islamiah. Khalid also did not report the value of any free housing or utilities as compensation on his tax returns. When the USCIS asked the Madrasah Islamiah for clarification through a Request for Evidence, the Madrasah Islamiah responded with a utility bill bearing a different address than the address the Madrasah Islamiah claimed Khalid was living at.

The Madrasah Islamiah explains these inconsistencies by claiming that Khalid lived with his brother-in-law from 2005 to 2010 and received no free housing or utilities from the Madrasah Islamiah during that time. The Madrasah Islamiah claims it gave Khalid $200 per month instead. (CAR 1190–1201). In 2011, Khalid was moved to an apartment with the Madrasah Islamiah's name on the lease. But Khalid paid the rent on that apartment, as well as the electricity bill, himself. The remaining utilities were provided at no additional charge by the apartment complex (which presumably paid for the utilities from the rent that Khalid paid).

The information the Madrasah Islamiah provided about Khalid's compensation was inaccurate and inconsistent. Despite the Madrasah Islamiah's continued assertions that Khalid's compensation included free housing and utilities, the information given to the USCIS showed that Khalid paid for his own rent and utilities, and received an extra $200 every month from the

Madrasah Islamiah.  The USCIS was entitled to deny Khalid's petitions due to these misstatements.  *See Hawaii Saeronam Presbyterian Church*, 243 Fed. App'x at 226.

These gaps appear small and technical, given the information the plaintiffs did provide and the consequences of denial.  But the statute is not flexible and a balancing test is not appropriate here.  The issue is whether the gaps and inconsistencies in the information the Madrasah Islamiah provided to the USCIS, and the repeated failures to explain them, justified the agency determination that the Madrasah Islamiah did not comply with the statutory and regulatory requirements for the I-260 and I-129 Petitions.  The answer is that the USCIS's denial of the Petitions was not arbitrary and capricious.

**IV.    Conclusion**

The defendants' motion for summary judgment is granted, and the plaintiffs' motion for summary judgment is denied.  Final judgment is separately entered.

SIGNED on February 13, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

22